Downet, Judge,
delivered the opinion of the court:
In August, 1917, the plaintiff entered into a contract with the United States for the manufacture and delivery of 5,000,000 110-grain percussion primers for use in artillery ammunition at the price of 12 cents each. After the plaintiff had begun performance of the contract and was getting into quantity production the War Department determined to use the French 75-millimeter gun instead of the 3-inch field piece of the United States, making it necessary to procure a supply of ammunition for the 75-millimeter gun, for which the primer contracted for was not suitable.
Another primer suitable for use in the 75-millimeter gun was developed, and the United States sought to arrange with the plaintiff company for the curtailing of the contract referred to and the transfer of plaintiff’s productive powers to the manufacture of the new primer. The proposal was to *263 curtail manufacture under the existing contract to 40 per cent. The plaintiff company was willing to comply with the wishes of the War Department, but suggested that if production was to be curtailed under its contract and its production interrupted by the taking over of the manufacture of the new primer, it should be entitled to a larger price for the lesser number of primers manufactured under the existing contract. Production under the contract was suspended, and the necessary changes were made to take up in lieu thereof the manufacture of the new primer.
There were exchanges of views in much detail between representatives of the plaintiff company and of the United States with reference to the additional compensation that the plaintiff should- receive for the primers made under the existing contract, and it was finally agreed that the original contract should be so modified as to provide for a price of 13.8 cents per primer, in lieu of the price of 12 cents, originally provided for. The officer of the United States who had executed for the United States the original contract and who was duly authorized in such matters informed the plaintiff, in writing, of the change, which plaintiff, also in writing, duly accepted.
After the plaintiff had resumed production as hereinafter referred to and had produced a considerable number of the primers called for by the original contract and had been paid therefor at the increased price of 13.8 cents per primer, payment of such additional price was suspended upon the announced theory that the contract for the payment of the increased price was void for lack of consideration. Payments of the increase which had been made were deducted from other sums due the plaintiff, so that it has never received the increase of 1.8 cents per primer agreed upon.
The defendant counterclaims for the total amount of this increase in price, but why it should counterclaim is not apparent, since it is the increase in price for which the plaintiff is suing and apparently all that is necessary in the protection of the Government’s interest is a defense of plaintiff’s suit.
The findings are very full as to the details of the transaction and from them it is apparent that able and competent *264 men were called upon to pass on the question as to the increase in price to which the plaintiff under the circumstances should be entitled, and it seems quite apparent that the Government’s interests were not only in competent hands but were carefully safeguarded. There was no question, so far as appears, about the fact that the plaintiff, under the circumstances, would be entitled to some increase in price, the only question being as to its amount. The plaintiff represented that it was entitled to considerable more than the price finally agreed upon and there is no room for any suggestion that the United States was in any way overreached or defrauded.
We can not agree with the conclusion reached by someone having to do with the matter that this supplemental agreement or modification of the original contract was void for lack of consideration. The plaintiff was in possession of a contract for the manufacture of 5,000,000 primers; it was just getting into quantity production, the value of which in the performance of such a contract is apparent; it was asked not only to agree to a curtailing of production in that contract, but also to such an interruption of its productive program as was necessary in the taking on of the manufacture of a different primer in lieu of that one then in process. There is no room, it seems to us, for the contention that there was no consideration for this modification of the original contract, and since the agreement was made on the part of the United States by the officer who had executed the original contract and who was charged with the duty of procuring such supplies for the United States, there can be no other infirmity in the transaction.
After the plaintiff had devoted its facilities for some time to the manufacture of the new primer the United States ascertained that it was going to need more of the primers called for by plaintiff’s original contract and asked the plaintiff to resume production of these primers, which it did and thereafter furnished a very considerable number, but not quite the entire number originally called for. It is suggested that this resumption of the manufacture of the primer called for by the original contract worked a failure of consideration as to the modification thereof providing for the increased *265 price. We are not able to give this effect to this situation. When the United States asked resumption of production of the original primer it did it under a contract which as modified then provided for a price of 13.8 cents per primer. But aside from that, the fact that plaintiff resumed production of the original primer and thereafter produced a considerable number thereof could not obviate the effects upon the plaintiff of the interruption of quantity production when it was required to change from the original to the new primer.
Subsequent to this transaction the United States and the plaintiff company entered into a settlement contract from the operation of which there was a special reservation as to the amount claimed to be due to plaintiff on account of this increased cost per primer, and in said settlement contract it is stipulated that this reserved claim amounts to $85,248.75. We conclude that the plaintiff is entitled to recover this amount and have so ordered..
Graham, Judge; Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur.